IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
BRIDGEPORT DIVISION

ROBERT FROMER, individually and on    :
Behalf of all others similarly situated    :
                                                              :     Civil Action No. _____
                            Plaintiff,                   :
                                                              :
            V.                                               :
                                                              :
COMCAST CORPORATION,             :
COMCAST OF CONNECTICUT, INC.,  :
COMCAST CABLE COMMUNICATIONS,:
 INC., and COMCAST CABLE           :
COMMUNICATIONS HOLDINGS, INC.  :
                                                              :
                            Defendants.               :

## CLASS ACTION COMPLAINT

Plaintiff, Robert Fromer (hereinafter "Plaintiff"), individually and as representatives of

classes of similarly-situated individuals, brings this Complaint against Comcast

Corporation, Comcast of Connecticut, Inc., Comcast Cable Communications, Inc. and

Comcast Cable Communications Holdings, Inc. (hereinafter "Defendants" or

"Comcast") and alleges the following:

### INTRODUCTION

     1.     This is a class action brought by Plaintiff individually and on behalf of all

persons who purchase digital voice and high speed internet services from Defendants in

the United States. Defendants' digital voice customers ("DV") have no choice but to pay

an additional rental fee for a modem known as an "embedded media terminal adapter"

("eMTA") in order to utilize the DV services for which they pay a separate fee.   As

alleged herein, Defendants' actions constitute an unlawful tying arrangement resulting in

an impermissible restraint of trade in violation of both state and federal law.

2.     Defendants' activities have and will continue to threaten to have adverse competitive effects on interstate commerce and on commerce within the State of Connecticut and throughout the United States.

## THE PARTIES

3.     Plaintiff is a citizen of the State of Connecticut who resides at Windsor, Connecticut.

4.     At all times relevant hereto, Plaintiff has been a subscriber of digital voice service provided by Defendants.

5.     Plaintiff brings this action on his own behalf and on behalf of the following classes of similarly situated persons (the "Classes"), of which Plaintiff is a member:

> *Count I Class.* Persons throughout the United States who subscribed to Comcast Corporation or its subsidiaries for DV service and who were required to and did pay a separate monthly fee to Comcast for the use of the eMTA ("the Count I Class").

> *Count II Class.* Persons in the State of Connecticut who subscribed to Comcast Corporation, Comcast of Connecticut, Inc., Comcast Cable Communications, Inc. or Comcast Cable Communications Holdings, Inc. for DV service and who were required to and did pay a separate monthly fee to Comcast for the use of the eMTA ("the Count II Class").

> Excluded from the Classes are those Comcast customers who receive DV service at an address at which they may receive DV service from at least one competing digital voice service provider in addition to Comcast; however, this exclusion shall only apply as of the date such competing service became available and does not defeat such class members' right to a remedy for injuries suffered prior to the existence of such competition.

Excluded from the Classes are the Defendants; officers, directors or employees of Defendants; any entity in which Defendants have a controlling interest; the affiliates, legal representatives, attorneys, heirs or assigns of Defendants; and any federal, state or local governmental entity, and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staffs. Plaintiff reserves the right to modify or amend this Class definition if discovery and/or further investigation so necessitate.

6.      Defendant, Comcast Corporation is a publicly held Pennsylvania corporation with its principle place of business located in Philadelphia, Pennsylvania.

7.      Defendant, Comcast of Connecticut, Inc. is an Oklahoma corporation with its principle place of business located in Philadelphia, Pennsylvania. It is believed, and therefore averred, that Comcast of Connecticut, Inc. was, at all times relevant hereto, a wholly owned subsidiary of Comcast Corporation.

8.      Defendant, Comcast Cable Communications, Inc. is a Delaware corporation with its principle place of business located in Philadelphia, Pennsylvania. It is believed, and therefore averred, that Comcast Cable Communications, Inc. was, at all times relevant hereto, a wholly owned subsidiary of Comcast Corporation.

9.      Defendant, Comcast Cable Communications Holdings, Inc. is a Delaware corporation with its principle place of business located in Philadelphia, Pennsylvania. It is believed, and therefore averred, that Comcast Cable Communications Holdings, Inc. was, at all times relevant hereto, a wholly owned subsidiary of Comcast Corporation.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action involves claims arising under federal law. Specifically, Plaintiff, on behalf of himself and each Class, is asserting claims under the Sherman Anti-Trust Act found at 15 U.S.C. § 1. This Court has supplemental jurisdiction under the additional common law and state law based claims pursuant to 28 U.S.C. § 1367.

3

11.     This Court has personal jurisdiction over the parties in this action by the fact that Defendant either resides in this District or is a corporation duly licensed to do business in this District.

12.     Venue is proper in the District of Connecticut under 28 U.S.C. § 1391 and 15 U.S.C. §22.


## FACTUAL BACKGROUND


13.     Comcast is the largest provider of cable services in the United States, and a leading provider of entertainment, information and communication products and services. As of April 30, 2009, Comcast served approximately 24.1 million cable customers, 15.3 million high-speed internet customers and 6.8 million Comcast Digital Voice customers in thirty-nine states and the District of Columbia.

14.     Customers subscribe to Comcast for Digital Voice service and pay a monthly fee for such service.

15.     In addition to paying a fee for DV service, Plaintiff and the Classes are also required to pay an additional monthly rental fee to Comcast for an eMTA. The eMTA is required in order for Plaintiff and the Classes to use the DV service for which they pay a separate fee. In other words, the DV service can only be accessed and used by Comcast customers who also lease an eMTA from Comcast. Comcast's own website informs its customers of this requirement:

> Q: Can I purchase my own eMTA for use with Comcast Digital Voice service or do I have to lease the modem directly from Comcast?
>
> The only device that will work with your Comcast Digital Voice service is the Comcast supplied eMTA, which is delivered and installed by a Comcast technician. Currently Comcast Digital Voice is not compatible with equipment purchased elsewhere.

> *http://www.comcast.com/customers/faq/FaqDetails.ashx?ID=3054&fss=c*
> *an%20i%20purchase%20my%20own%20emta*

4

16.     Although eMTA modems are manufactured by many different companies, Comcast purchases its eMTA modems from Motorola and Arris.  If not for the tying of the DV service to the eMTA, Plaintiff and the Classes could purchase or rent an eMTA from the manufacturer or provider of their choice and use that eMTA to access and use the DV service provided by Comcast.

17.     As a result of Comcast's practice of tying the DV service to the eMTA, the Plaintiff and the Classes are denied a choice to use other eMTA modems.  In addition, Comcast refuses to sell the eMTA to its customers thereby forcing customers to pay monthly rental fees which within a number of months exceed the value of the eMTA. Thus, by tying the DV service to the eMTA, Comcast forces Plaintiff and the Classes to pay a significantly greater sum for DV service than would be required if the two products remained distinct.

18.     Upon information and belief, Comcast purchases eMTA modems from manufacturers, such as Motorola and Arris, at a fixed cost and then rents those same eMTA modems to Plaintiff and the Classes, with full knowledge that the Plaintiff and the Classes, because of Comcast's improper conduct, have no choice but to pay the rental fees charged by Comcast.  Upon information and belief, the modem equipment market involves a significant amount of interstate commerce.

## CLASS ACTION ALLEGATIONS

19.     This action satisfies the prerequisite for maintenance as a class action set forth in Fed. R. Civ. P. 23(a) with respect to Counts I and II, as set forth below.

20.     Class Definition.  Plaintiff brings this action individually and on behalf of the following classes of similarly situated persons (the "Classes"), of which Plaintiff is a member:

> *Count I Class*.  Persons throughout the United States who subscribed to Comcast Corporation or its subsidiaries and affiliates for DV service

and who were required to and did pay a separate monthly fee to Comcast for the use of the eMTA ("the Count I Class").

*Count II Class.* Persons in the State of Connecticut who subscribed to Comcast Corporation, Comcast of Connecticut, Inc., Comcast Cable Communications, Inc. or Comcast Cable Communications Holdings, Inc. for DV service and who were required to and did pay a separate monthly fee to Comcast for the use of the eMTA ("the Count II Class").

Excluded from the Classes are those Comcast customers who receive DV service at an address at which they may receive DV service from at least one competing digital voice service provider in addition to Comcast; however, this exclusion shall only apply as of the date such competing service became available and does not defeat such class members' right to a remedy for injuries suffered prior to the existence of such competition.

21.     Numerosity: The members of each Class are so numerous and geographically dispersed that their individual joinder would be impracticable in that: (a) each Class includes thousands of individual members; (b) the precise number of Class members and their identities are unknown to Plaintiff but are well known to Comcast and can easily be determined through discovery; (c) it would be impractical and a waste of judicial resources for each of the thousands of individual Class members to be individually represented in separate actions; and (d) the relatively small amount of damages suffered by some of the Class members do not make it economically feasible for those Class members to file an individual action to protect their rights.

22.     Commonality/Predominance: Common questions of law and fact predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

a. Whether Comcast is liable to Plaintiff and the members of each Class for violations of federal antitrust laws;

b. Whether Comcast has established an unlawful tying arrangement for the rental of eMTA modems, in violation of state and federal laws;

c. Whether Comcast's actions have caused damages to Plaintiff and the members of each Class;

d. Whether Comcast should be enjoined from further violations of the state and federal laws;

6

e. Whether Comcast is liable to the Plaintiff and the members of each Class for treble damages as a result of its violation of federal antitrust laws;

f. Whether Comcast is liable to the Plaintiff and the Class for treble damages as a result of its violation of the Connecticut Unfair trade Practices Act, C.G.S. §42-110 *et seq.*

23.    Typicality: Plaintiff's claims are typical of the claims of each Class. Plaintiff and all Class members have been injured by the same wrongful practices engaged in by Comcast. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

24.    Adequacy: Plaintiff will fully and adequately assert and protect the interests of each Class.  Plaintiff has retained counsel who are competent and have experience in complex mass tort litigation. Neither Plaintiff nor his counsel have interests contrary to or conflicting with the interests of each Class.

25.    Superiority: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims by each of the Class members is economically unfeasible and impractical. While the aggregate amount of the damages suffered by each class is in the millions of dollars, the individual damages suffered by each of the Class members as a result of the wrongful conduct by Comcast are too small to warrant the expense of individual lawsuits. Even if the individual damages were sufficient to warrant individual lawsuits, the court system would be unreasonably burdened by the number of cases that would be filed.

26.    Plaintiff does not anticipate any difficulties in the management of this litigation.

## COUNT I

## VIOLATION OF THE SHERMAN ANTITRUST ACT -
## UNLAWFUL TYING OF DV SERVICE AND EMTA MODEM

27.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein at length.

28.     The Sherman Antitrust Act makes it unlawful to enter into a contract in restraint of trade or commerce. 15 U.S.C. § I.  Congress has granted a private right of action to individuals harmed by violations of this Act. 15 U.S.C. § 15.

29.     Plaintiff, on his own behalf and on behalf of the Count I Class, seeks to recover damages they suffered as a result of Comcast' s violation of the Sherman Antitrust Act.

30.     At all times relevant hereto, Comcast improperly tied and bundled its DV service with the required rental of an eMTA modem. Specifically, Comcast contracted with Plaintiff, and Count I Class members, to provide DV service but only on the condition that Plaintiff, and all Count I Class members, also pay an additional monthly rental fee to Comcast for a Comcast eMTA modem configured to utilize DV service.

31.     No member of the Count I Class, including Plaintiff, can unbundle or untie the two products, i.e., DV service and the eMTA modem.

32.     As a result, Plaintiff and the Count I Class are forced to pay rental fees for the eMTA modem in addition to the fees they pay for DV service.

33.     At all times relevant hereto, Comcast has maintained, and exerted sufficient economic and market power to coerce Plaintiff and the Count I Class to pay rent for the eMTA modem and accept the tied products.

34.     Comcast's improper tying of the eMTA modem to the DV service harms competition. The eMTA modem market is dominated by two manufacturers, both of which sell products to Comcast.  Since Plaintiff and the Count I Class are restricted to renting an eMTA directly from Comcast, there is little incentive for other manufacturers to enter the market, and those that do are precluded from renting or selling their products to Plaintiff or the Count I Class at lower, market-driven prices.

8

35.     At all times relevant hereto, a market for eMTA modems existed that is separate and apart from the market for Comcast's DV service. The two items (digital voice service and the eMTA modem) are separate and distinct items.

36.     At all times relevant hereto, Comcast has maintained sufficient power in the DV market to force Plaintiff and the Count I Class to accept the rental arrangement which they otherwise would not accept absent Comcast' s extraordinary economic and market power. This economic power will continue absent the relief sought herein.

37.     Comcast's conduct has a substantial and adverse impact on interstate commerce in the market for eMTA modems.

38.     Comcast's bundling and tying of DV service and the eMTA is an unreasonable restraint of trade in violation of the Sherman Antitrust Act.

39.     Comcast's conduct has been, and continues to be, the direct cause of damage to the Plaintiff and the Count I Class.

40.     There is no lawful business justification for Comcast's conduct.


## COUNT II
## VIOLATION OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT - UNLAWFUL TYING OF EMTA AND DV SERVICE


41.     Plaintiff brings this Count on behalf of himself individually and on behalf of the Count II Class described in Paragraph 20, supra, only.

42.     Plaintiff repeats and re-alleges the allegations of Paragraphs 1 through 40, supra, as though fully stated herein.

43.     At all times relevant hereto, there was in full force and effect the Connecticut Unfair Trade Practices Act, C.G.S. §42-110, et seq. ("CUTPA").

44.     CUTPA is a regulatory and remedial statute intended to protect consumers, including Plaintiff and the Count II Class, against unfair business practices. Specifically, Chapter 42-110b of the Unfair Trade Practices Act prohibits unfair acts or practices used or employed in the conduct of any trade or commerce. C.G.S. §42-110b.

45.     Defendant's practice of charging Plaintiff and the Count II Class for the use of eMTA in connection with the use of its DV service, as described more fully *supra*, is an unfair act or practice prohibited by C.G.S. §42-110a of CUTPA.

46.     Defendant intended to be unfair to Plaintiff and the Count II Class by imposing eMTA fees as a condition of receiving its DV service, well in excess of the recovery costs associated with the eMTA as set forth more fully supra.

47.     The unfair act or practice alleged herein was used or employed in the conduct of trade or commerce, namely, providing digital voice service to Plaintiff and the Count II Class.

48.     The unfair act or practice alleged herein proximately cause actual damage to Plaintiff and the Count II Class who paid such eMTA fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Classes, demands judgment in his favor and against Defendants as follows:

a. For an Order certifying each Class pursuant to Fed. R. Civ. P. 23 appointing Plaintiff as the representative of each Class, and appointing counsel for Plaintiff counsel for each Class;

b. For an Order that Comcast violated the Sherman Antitrust Act, 15 U.S.C. § I, et seq.;

c. For an Order that Comcast violated the Connecticut Unfair Trade Practices Act, C.G.S. §42-110, et seq.;

10

d. For an Order enjoining Comcast from continuing the practice of tying digital voice service to the rental of an eMTA modem from Comcast;

e. For an award of all compensatory and other damages suffered by Plaintiff and each Class;

f. For an award of all statutory damages under both the Sherman Antitrust Act and the Connecticut Unfair Trade Practices Act;

g. For an award of all costs incurred by Plaintiff in pursuing this action;

h. For an award of reasonable attorneys' fees; and for any other relief the Court deems reasonable.

## JURY DEMAND

Plaintiff demands a trial by jury of all factual issues.

THE LAW OFFICES OF
MEDICO AND NAPOLITANO, LLC

Anthony J. Medico
CT Federal Bar No. 13310
anthony@ajmedico.com
7 Benedict Place
Greenwich, CT 06830
Telephone: (203) 661-8151
Fax: (203) 625-9612

Frank Napolitano
CT Federal Bar No. 12123
frank@ctreattorney.com
7 Benedict Place
Greenwich, CT 06830
Telephone: (203) 661-8151
Fax: (203) 625-9612

WILLIAM M. SWEETNAM
(Pending Admission Pro Hac Vice)
wms@sweetnamllc.com
5 Revere Drive, Suite 200
Northbrook, Illinois 60062
(845) 498-7500
(847) 919-4399 Fax
*Attorneys for Plaintiff*